UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Case No. 14-cr-20303

    Plaintiff,

vs.             HON. MARK A. GOLDSMITH

DEVIN EDWARD SMITH,

    Defendant.

_____/

**ORDER & OPINION**
**(1) DENYING DEFENDANT'S MOTION TO VACATE HIS SENTENCE (Dkt. 110), (2)**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO**
**AMEND OR CORRECT HIS MOTION TO VACATE (Dkt. 116), AND (3) DENYING AS**
**MOOT DEFENDANT'S MOTION TO PROVIDE DOCUMENTS (Dkt. 118)**

Before the Court is Defendant Devin Smith's motion to vacate his sentence under 28 U.S.C.

§ 2255 (Dkt. 110).  He also filed a motion to amend or correct that motion (Dkt. 116) and a motion

asking the Court to be present during testimony and to provide him with any documents provided

to the Government (Dkt. 118).  For the reasons that follow, the Court denies Smith's § 2255

motion, grants in part and denies in part his motion to amend his § 2255 motion, and dismisses as

moot his motion to provide him with documents provided to the Government.[1]

---

[1] The briefing on Smith's § 2255 motion also includes the Government's response (Dkt. 123).
Additionally, Smith filed a motion for an evidentiary hearing (Dkt. 124), which the Court granted
(Dkt. 127).  Following an evidentiary hearing that took place over two days, each of the
Government, Smith's standby counsel, and Smith individually filed proposed findings of fact and
conclusions of law on the issues raised in Smith's motions.  See Gov't. Suppl. Mem. (Dkt. 146);
1st Def Suppl. Br. (Dkt. 151); 2d Def. Suppl. Br. (Dkt. 152).

## I. BACKGROUND

The Government charged Smith with (i) three counts of sex trafficking by force, fraud, or coercion under 18 U.S.C. § 1591(a)(1) as to victims H.E., B.W., and A.S; and (ii) one count of sex trafficking of children under 18 U.S.C. § 1591(a)(1) as to victim M.R.  See 1st Superseding Indictment at 1–3 (Dkt. 24).  The Hon. John O'Meara presided over an eight-day jury trial.  See Gov't Resp. to Def. Mot. to Vacate at 2.  The jury returned guilty verdicts on three counts of sex trafficking, but the jury was unable to reach a verdict regarding A.S.  See Verdict Form at 1–2 (Dkt. 49).  The Court sentenced Smith to 30 years in prison.  See Judgment at PageID.445 (Dkt. 89).  Smith appealed (Dkt. 90), and the United States Court of Appeals for the Sixth Circuit affirmed his conviction, see United States v. Smith, 706 F. App'x 241, 243 (6th Cir. 2017).

Smith timely filed the motion to vacate his sentence under 28 U.S.C. § 2255 now before this Court.  Smith's case was subsequently reassigned to the undersigned.  Smith then sought to add new arguments to his § 2255 motion through his motion to amend or correct his § 2255 motion.

## II. ANALYSIS[2]

Smith's § 2255 motion argues that his trial counsel—James Gerometta and Andrew Wise—provided ineffective assistance of counsel in multiple ways.[3]  The Court addresses each argument in turn, and then it considers Smith's two remaining motions.

---

[2] To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (punctuation modified, citation omitted).

[3] A defendant must establish two points to "demonstrate that a counsel's performance was so defective as to require reversal of a conviction: first, the defendant must show that counsel's performance was deficient[,] and second, the defendant must show that the deficient performance prejudiced the defense." Lint v. Preselnik, 542 F. App'x 472, 475 (6th Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)) (punctuation modified).  To establish deficient performance, a defendant must show that "counsel's representation fell below the objective

2

## A.  Right to Testify

Smith contends: "Counsel was ineffective for coercing and misleading SMITH from exercising his right to testify on his own behalf; and the district court abused its discr[e]tion in threatening SMITH to unvoluntarily [sic] waiving his right to testify on his own behalf, violating SMITH's Fifth and Sixth Amendment right to the U.S. Constitution."  Def. Mot. to Vacate at PageID.1657.  In Smith's view, he told his trial counsel both before trial and at the close of the Government's case that he would like to testify in his own defense, but counsel told him that it was not a good strategy to put him on the stand, and they did not do so.  Id.  When Smith insisted that he wanted to take the stand, his counsel told him "'to take it up with the district court.'"  Id. at PageID.1658.

The Court first reviews the evidence regarding the supposed denial of Smith's right to testify, and it then turns to Smith's arguments.

### i.       Discussions With Trial Counsel in Advance of Trial

Both of Smith's trial attorneys testified during the evidentiary hearing.  Gerometta stated that he and Smith had discussed Smith's right to choose whether or not to testify "multiple times," and it was a subject that he and Smith discussed more frequently as trial approached.  6/8/22 Hr'g Tr. at 56 (Dkt. 144).  Gerometta recalled that Smith had not yet decided whether to testify as trial commenced, id. at 56–57, though Smith was seriously considering doing so, id. at 95–96.

---

standard of reasonableness."  Id. (punctuation modified).  On this first element, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Strickland, 466 U.S. at 689 (punctuation modified).  To succeed on the second step, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Lint, 542 F. App'x at 476 (punctuation modified).

Gerometta advised Smith that he <u>not</u> testify, given Gerometta's concerns about Smith's "demeanor," the possibility that he might say something that would be construed as an admission, and the risk of questions introduced on cross-examination relating to a recorded interview of Smith. <u>Id.</u> at 57–58. However, Gerometta told Smith that "[i]t was ultimately his choice whether to testify," which is a conversation that Gerometta has had many times in twenty years as a defense attorney. <u>Id.</u> at 58.

Wise was second chair to Gerometta on Smith's case. <u>Id.</u> at 124. He did not specifically recall discussing with Smith his decision regarding whether to testify, <u>id.</u> at 129–130, but Wise testified that the fact that Smith had the power to choose was "something I would tell a client that I was preparing for trial[,] certainly," <u>id.</u> at 129. Wise spent his entire legal career at the Federal Defender's office and handled over 2,000 cases. <u>Id.</u> at 123–124. Like Gerometta, Wise believed that Smith should not testify given his demeanor and certain statements Smith had made regarding the case, including the way in which Smith "sort of compared himself to the CEO of an organization here in his role with respect to these women and their commercial sex work." <u>Id.</u> at 127.

Smith also testified that he had "several conversations" with his defense counsel regarding his right to testify, but he thought it was "never made [] clear that it was [his] choice whether or not [he] take the stand [on his] own behalf." 7/5/22 Hr'g Tr. at 36.

### ii.   Representations Made to Trial Court

As the Government's case concluded at trial, Gerometta recalled that Smith was "still sort of on the fence" about whether to testify, and Smith asked Gerometta if he could watch his recorded interview again before deciding. <u>Id.</u> at 58. The trial record reflects that, after returning from recess, Gerometta stated: "Your Honor, when I spoke to Mr. Smith in lockup, he <u>indicated at that</u>

point he did not wish to testify. When we came in, he asked me about <u>reviewing a video of his</u> <u>interview before he makes that decision</u>." 11/24/14 Trial Tr. at PageID.1485–1486 (Dkt. 101) (emphasis added). The Court expressed its preference to "go[] ahead with the trial," continuing: "the whole business that's been going on here this morning, yesterday or last week, and pretty much in the time that we've been talking in and out of lockup has been an abuse of process, in at least a mild sense by the Defendant, and it's over. We're going to go ahead with the rest of the trial. Basically, what has happened, <u>if there was a choice made by the Defendant not to testify, it</u> <u>was made</u>. It's been made by dithering around, if nothing else, but it was made a long time ago I think." <u>Id.</u> at PageID.1486 (emphasis added).

Wise then stated: "I think it is also appropriate at this point to put Mr. Smith's decision to testify or not to testify on the record from Mr. Smith." <u>Id.</u> at PageID.1486–1487. The Court asked what that decision would be, and Wise said, "It should be a yes or no answer." <u>Id.</u> at PageID.1487. The Court stated: "Well, <u>I know the answer, as of right now, he's not testifying</u>. Now, if we want to mess around with that, we will, but it's not going to happen over there. <u>You're getting close to</u> <u>contempt over there</u>. So let's call another witness and we'll go on to closing arguments." <u>Id.</u> (emphasis added).

Before the Court brought in the jury, Wise stated: "I would put on the record that <u>Mr. Smith</u> <u>just indicated to me that it was his decision not to testify</u>." <u>Id.</u> at PageID.1487 (emphasis added). When testifying at the evidentiary hearing, Wise did not retain an independent recollection of what Smith had told him at this point in the trial, <u>see</u> 6/8/22 Hr'g Tr. at 131–133, but Wise averred in his affidavit: "I would not have represented to the Court that Mr. Smith had made the decision not to testify without Mr. Smith so indicating or if Mr. Smith told me that he wished to testify or remained undecided," Wise Aff. at 2 (Dkt. 123-4).

Gerometta did not hear this exchange between Smith and Wise, but he was able to observe Smith's demeanor when Wise informed that Court that Smith had decided not to testify, and Gerometta did not "observe anything unusual." 6/8/22 Hr'g Tr. at 63. For instance, Smith did not appear to respond as if Wise had misrepresented his intentions, and Smith did not interrupt the Court to insist on testifying. Id.

After Wise's statement, Eaten Brown of the Government suggested that the Court voir dire Smith "as to whether or not that's his decision, that he made it voluntarily and with the advice of counsel." 11/24/14 Trial Tr. at PageID.1487–1488. The Court stated: "Mr. Smith, you've heard all of this, do you choose not to testify?" Id. at PageID.1488 (emphasis added). Smith stated: "Under—under what was said in the court, I'm going with what the Court said. Thank you." Id. (emphasis added). The Court stated: "All right. Now you choose not to testify. Let's bring the jury in." Id. (emphasis added).

### iii.   Alleged Ineffectiveness of Counsel and Interference of Trial Court

"[A] defendant's right to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the Defendant." United States v. Campbell, 86 F. App'x 149, 153 (6th Cir. 2004). "To ensure a defendant's constitutional rights, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel as to whether he should take the stand." Id. at 154. "[A] Defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court or discharging counsel." Id. (punctuation modified, citations omitted). To establish the violation of his right to testify, a defendant must "overcome the presumption that he willingly agreed with his counsel's advice not to testify." Id. at 154–155 (finding that trial court did not violate defendant's right to testify when court allowed trial to

6

proceed without defendant's testimony after defendant told court, "I'll testify," and defendant's counsel then stated on the record, "my client has decided not to testify").

In Smith's view, his counsel first performed deficiently because they never made it clear to him that it was Smith's choice alone as to whether he could testify. 2d Def. Suppl. Br. at 4 (citing 7/5/22 Hr'g Tr. at 36–40). Smith considers counsel's testimony to the contrary unconvincing, stating: "[b]oth Attorneys Gerometta and Wise rely on what they think may have occur[r]ed in Mr. Smith's case due to their ordinary practice of law and how they would have handled other cases." Id. at 2.

The evidence does not support Smith's position that his trial counsel never explained that it was his choice to testify. Gerometta and Wise are highly experienced defense attorneys who are practiced in explaining constitutional rights to their clients. Gerometta specifically remembered informing Smith that he held the right to decide whether to testify, and based on multiple conversations, Gerometta thought that Smith understood that whether to testify was "his right and his choice." 6/8/22 Hr'g Tr. at 115. The trial record accords with this understanding, as Smith's counsel and the Court spoke at length regarding Smith's "decision" and "choice" on this subject. 11/24/14 Trial Tr. at PageID.1485–1488. Smith also admits that he and Gerometta had "several conversations regarding [his] right to testify." 7/5/22 Hr'g Tr. at 36. It is simply not credible that, during these several conversations, counsel repeatedly asserted to Smith that he had no choice in the matter. Smith has not shown that counsel's performance in this regard "fell below the objective standard of reasonableness." Lint, 542 F. App'x at 475 (punctuation modified).

Similarly lacking in merit is Smith's suggestion that Gerometta "use[d] a manipulative strategy to try to force Smith into a making a decision about his right to testify," apparently because Gerometta continually advised Smith that it was not a good strategy to testify and did not prepare

7

Smith to testify.  2d Def. Suppl. Br. at 7 (citing 6/8/22 Hr'g Tr. at 96).  Gerometta and Wise

explained their reasons for advising that Smith not subject himself to the scrutiny of the stand.

There is nothing "manipulative" about experienced trial counsel sharing their advice that their

client not risk being cross-examined or presenting himself to the jury in an unfavorable light.  A

court's "review of counsel's strategy and trial tactics should be 'highly deferential' and should

avoid second-guessing."  Bentley v. Motley, 248 F. App'x 713, 718 (6th Cir. 2007) (quoting

Strickland, 466 U.S. at 689).  Gerometta and Wise's message to Smith that they advised he should

not testify constitutes trial strategy.  This degree of performance is not objectively unreasonable.

Lint, 542 F. App'x at 475.  The Court also notes that Smith here seems to concede that he had

some degree of understanding that he could make a "decision" on whether to testify, 2d Def. Suppl.

Br. at 7, further weakening his earlier argument.

      For similar reasons, Smith cannot prevail on his argument that it was "objectively

unreasonable" not to place Smith on the stand.  1st Def. Suppl. Br. at 5.  Smith submits that "there

was no conceivable trial strategy for not having Mr. Smith testify," as "it was only through the

presentation of Mr. Smith's testimony that the trier of fact could have known his true lack of

participation in the crimes alleged." Id. at 5–6.  Smith does not cite case law for the novel argument

that—independent of a defendant's personal choice as to whether or not to testify—a defendant's

testimony can be so obviously essential that counsel can be constitutionally deficient for not

putting the defendant on the stand.  This is not that case.  Gerometta and Wise explained their

concerns with Smith testifying.  Their position that he should not do so was one of "strategy and

trial tactics." Bentley, 248 F. App'x at 718.  Their performance was not deficient.

      Smith next presents arguments relating to his supposed waiver of his right to testify before

the trial court.  At this point, Smith thought that had he had been clear to his counsel "that he still

8

wanted to take the stand and give testimony on his own behalf." 2d Def. Suppl. Br. at 2. He argues that "it appears" his right to testify "was waived by counsel—not by Smith—since there is no record of Mr. Smith waiving his personal right to testify." 1st Def. Suppl. Br. at 7. Smith accuses Wise of lying when he put on the record that Smith indicated he chose not to testify. Id. at 3; see also id. at 5 ("Attorneys Gerometta and Wise lied when they told Judge O'Meara that Smith stated he did not wish to take the stand and testify on his own behalf."). He relies on Wise's testimony that Wise did not retain a specific recollection of Smith telling him that he wished not to testify, and he notes Wise's admission that counsel did not object to the trial court's determination that Smith had waived this right. Id. at 3–5. Smith also infers that "these attorneys were in collusion, in order to aid the Government's case, by keeping Smith off the stand . . . ." Id. at 7.

Finally, Smith argues that "the district court's threat of contempt of court[] altered counsel's ability to adequately defend him with such a threat" and "altered SMITH's desire to exercise his right to testify." Def. Mot. to Vacate at PageID.1659; see also Def. Mot. to Amend at 6 ("[T]he district court threatening the use of expletives and contempt impermissibly interfered with Smith['s] right to testify . . . ."). He also takes issue with the attorneys' failure to object to the Court's threats of contempt. 1st Def. Suppl. Br. at 3–4.

The Court finds that Smith properly waived his right to testify. Wise first informed the Court that Smith had chosen not to testify. 11/24/14 Trial Tr. at PageID.1487. Smith is incorrect to suggest that this waiver was insufficient because it did not come from Smith's own mouth; trial counsel can communicate a defendant's decision not to testify. See Campbell, 86 F. App'x at 154–155. As the Government submits, see Gov't. Suppl. Mem. at 5, Smith's accusations that Gerometta and Wise were lying are not credible. Wise stated that he would not have told the Court that Smith

had agreed to waive his right if Smith had not done so.  See Wise Aff. at 2.  The Court has no reason to doubt this account.

Smith then reaffirmed his decision not to testify when the Court explicitly asked him: "do you choose not to testify?"  11/24/14 Trial Tr. at PageID.1488.  Smith responded, "I'm going with what the Court said," after the Court had stated its understanding that Smith had chosen not to testify.  Id.  The Court clarified, "Now you choose not to testify."  Id.  If Smith had wanted to testify, this was one opportunity to "insist[] on testifying, communicat[e] with the trial court or discharg[e] counsel."  Campbell, 86 F. App'x at 154 (punctuation modified, citation omitted).  Smith did not do so.

Nor do the trial court's references to potentially holding Smith in contempt violate his constitutional rights.  The record reflects that Smith's indecision regarding whether to testify had significantly slowed the proceedings; for example, on the same day as Smith's eventual waiver, Wise asked for "a little bit of time for Mr. Smith to make his final decision about whether or not he's going to testify," 11/24/14 Trial Tr. at 1027, and after a return from recess, the Court stated: "this group of lawyers and you, Mr. Smith, have taken an inordinate and unfair use of [the] jury's time, the Court's time, lawyers' time, and this is nonsense," id. at 1029.

The Court's mention of contempt in the context of efficiently managing the trial proceedings was not violative of Smith's constitutional rights.  The right to testify does not equate to the right to take the stand whenever the defendant likes or to delay proceedings indefinitely while he or she struggles to make a decision.  The Sixth Circuit has observed that "the right to testify on one's own behalf may be limited to accommodate other legitimate interests in the criminal trial process"; for example, "[a] rule generally limiting testimony to the evidence-taking phase is not arbitrary or disproportionate to the purpose [it is] designed to serve" considering that

it "promotes both fairness and order in trials." <u>Solomon v. Curtis</u>, 21 F. App'x 360, 362 (6th Cir. 2001) (finding that denial of right to testify was harmless) (punctuation modified, citations omitted). The trial court in this instance was doing its best to "promote[] both fairness and order." <u>Id.</u>

Smith has failed to "overcome the presumption that he willingly agreed with his counsel's advice not to testify" or to otherwise cast doubt on the legitimacy of his waiver of his right to testify made on the record. <u>Campbell</u>, 86 F. App'x 149 at 154 (punctuation modified, citation omitted). There is no constitutional harm here.

**B. Plea Agreement**

Smith argues that his "[c]ounsel performed deficiently in failing to inform and adequately explain the details of the plea offered by the government, depriving SMITH of the opportunity to make an informed decision regarding whether to accept the plea[] or not when it was available." Def. Mot. to Vacate at PageID.1660. Smith claims that the Government made a plea offer, but counsel did not explain it to him, and by the time he understood it, the Government had withdrawn the offer. <u>Id.</u> at PageID.1660–1661.

The evidence shows that Smith's trial counsel kept him informed about potential plea opportunities even before an informal plea was available. Gerometta testified that he first visited Smith at the Federal Detention Center in Milan, Michigan to discuss a potential plea agreement on October 23, 2014, before any plea was on the table. 6/8/22 Hr'g Tr. at 43. Gerometta took notes during this meeting, which contain the heading, "Smith 10/23/14 @ Milan." <u>See</u> Gerometta Aff. & Exhibits at 11 (Dkt. 123-3). These notes contain hand-written ranges of numbers under the title "Plea Offer," <u>id.</u>, which Gerometta explained represented "possible guidelines" for "what the plea offer would be," 6/8/22 Hr'g Tr. at 43–44. Smith testified that he remembered this meeting, at

11

which he and Gerometta discussed topics related to Smith's "guideline range" and "minimum mandatory 15 years." 7/5/22 Hr'g Tr. at 54 (Dkt. 145).

On November 6, 2014, Gerometta sent an email to the Government proposing a potential plea resolution. See Gov't Hr'g Ex. D. Gerometta suggested that Smith plead to an uncharged crime—using a cell phone to persuade, induce, entice, or coerce a minor to engage in prostitution—for a resulting guideline of "151-188 months with a Government recommendation at the bottom of that range." Id. The Government responded that it was "amenable to such a plea," but that it calculated the applicable guideline range differently: as high as 210–262 months, depending on Smith's criminal history. Id. The Government further stated that this "offer [was] only valid until the end of the day" on November 7. Id.

Gerometta testified that he emailed this informal offer to Smith, see 6/8/22 Hr'g Tr. at 49–50, but because there was no "full written Rule 11 agreement," the email "would just have been kind of a sketch or an outline of what the plea would have been," id. at 79. Smith confirmed that he had received this email from Gerometta. See 7/5/22 Hr'g Tr. at 58. Smith remembered that Gerometta "e-mailed [Smith] and said [Smith] ha[d] [until] tomorrow to let [Gerometta] know about a plea." Id. at 58. Smith thought that the email may have said the Government "offered [Smith] 210 or 210 to 235." Id. at 60.

Gerometta remembered—and confirmed upon reviewing his time sheets—that he traveled to visit Smith and discuss the potential plea with him on November 7. See 6/8/22 Hr'g Tr. at 49–50. Gerometta spent four hours working on Smith's matter that day, and he recalled that the plea offer was "the only thing [they] discussed that day and it was a lengthy discussion." Id. at 50–51. It was Gerometta's recollection that Smith did not make a decision regarding the plea during the meeting; Smith "wanted to think about it and talk to [Gerometta] later about it." Id. at 51. Either

12

that evening or the next day, Smith called Gerometta on Gerometta's cell phone. Id. at 51–52. Gerometta stated that Smith told him on that call that he had decided to reject the plea offer. Id.

Smith recalled the events of November 6 and 7 differently. Smith remembered that the phone call with Gerometta occurred the same night that Smith received Gerometta's email, not the evening of November 7 after their in-person meeting. See 7/5/22 Hr'g Tr. at 60. Smith recounted from that phone call: "I told him I don't want a plea for 210 months. I always told him I wanted 120 months, that I would consider taking that." Id. He similarly recalled from that conversation: "I said I got your e-mail and I'm not interested in a plea." Id. at 61. Consistent with this testimony, Smith submits in his present briefing that "Smith informed Gerometta, 'I don't want a plea for 210 months.'" 2d Def. Suppl. Br. at 10. Smith remembered that he and Gerometta did not discuss the plea during the November 7 in-person meeting. Id. at 58, 59, 60. When pressed to confirm that he and Gerometta did not discuss the potential plea at this meeting, Smith testified: "It was no need to discuss it. I already called him." Id. at 61. During the meeting, Smith claims, Gerometta "never said anything about it." Id. at 62.

On the first day of trial, the Government asked to put on the record that the parties had engaged in plea negotiations. See 11/12/14 Trial Tr. at 9 (Dkt. 94). The Government described a possible plea by the Defendant to an uncharged count of online enticement, for which the guideline range was "disputed" but for which the Government's proposed guideline range would be 188 to 235 months. Id. Gerometta confirmed that he had discussed the offer with Smith, and then he asked Smith: "Mr. Smith, we discussed a plea offer that would carry guidelines as low as 188 months, approximately 15 years, that had a ten year mandatory minimum, and you have rejected that plea and elected to go to trial, correct?" Id. at 10.

Smith responded before the trial court: "I have no understanding of that plea." Id. Smith later testified at the evidentiary hearing that his lack of understanding derived from the fact that "[t]his plea was not the same plea that Mr. Gerometta offered." 7/5/22 Hr'g Tr. at 65. The plea that Gerometta had previously communicated was "210 to 235 I believe," and Smith had "not hear[d] anything about a plea that carries 188 months and approximately 15 years." Id. at 65.

After Smith's statement before the trial court that he had no understanding of the plea, Gerometta conferred with Smith off the record. 11/12/14 Trial Tr. at 11–12. Gerometta remembered from this discussion that Smith's confusion concerned the mandatory minimum, relating: "I believe he would have taken a 10-year cap, but not the 10-year mandatory minimum[,] and because it was the mandatory minimum, he wasn't interested." 6/8/22 Hr'g Tr. at 53. Smith remembered that Gerometta had told him during this conversation that the plea offer had now "expired[,] so he said[,] just let them know you understand what the plea consisted o[f]." 7/5/22 Hr'g Tr. at 66. Smith testified that he would have accepted the plea described before the trial court at this time if it had been available. Id.

After their private conference, Gerometta subsequently explained to the Court, on the record, that Smith had been confused about "what the ten year mandatory meant, but that was a minimum, not a maximum." 11/12/14 Trial Tr. at 12. Expressing that he thought that Smith now understood the plea offer, Gerometta asked Smith on the record: "Do you understand that the offer that the Government gave you was you have to get at least 10 years, you could get up to 235 months, approximately 20 years, and your guidelines would be somewhere between 15 and 20 years. You understand that?" Id. Smith responded, "Yes." Id. Gerometta asked, "And based on that offer, you want to proceed to trial, not take that offer?" Id. Smith responded, "I do." Id. at 13.

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012).  "[W]here a petitioner alleges ineffective assistance of counsel prevented plea negotiations, demonstrating prejudice requires that he establish . . . that he would have accepted the offer, the prosecution would not have rescinded the offer, and that the trial court would not have rejected the plea agreement."  Byrd v. Skipper, 940 F.3d 248, 257 (6th Cir. 2019).

Smith cannot demonstrate that Gerometta performed deficiently in communicating the potential plea opportunity to Smith.  Gerometta and Smith agree that Gerometta (i) met with Smith to set a foundation for a potential plea before beginning negotiations with the Government, (ii) emailed Smith a description of a potential offer, (iii) held a phone conversation with Smith about that opportunity, and (iv) attended an in-person meeting with Smith before the expiration of the potential plea's deadline.  However, they part company when Smith contends that Gerometta "failed to adequately inform Mr. Smith" about the informal offer, 1st Def. Suppl. Br. at 11, leaving Smith without "a full understanding" of its contents, id. at 9; see also 2d Smith Suppl. Br. at 11.

The Court finds that Smith's claim that Gerometta did not adequately explain the informal offer is without merit.  Gerometta's testimony is credible that he spent many hours going over plea matters—and little else—at their in-person meeting on the day of the plea's deadline.  6/8/22 Hr'g Tr. at 50–51.  Smith's contention that they did not talk about it at all strains credulity.  Nor is Smith credible in claiming he was not adequately informed about it.

Even if Smith was confused about the offer before trial, he ultimately understood the offer and rejected it on the record, on the first day of trial.  After stating on the record that he had no understanding of the plea offer, he conferred privately with Gerometta.  Going back on the record, Gerometta recited the terms and asked Smith whether he wanted to reject the offer and proceed to

15

trial; Smith answered, "I do."  Smith exhibited no confusion, nor asked for any clarification.  He did not seek another private conference with his lawyer.  Earlier in the proceeding that day, Smith had not been shy about informing his lawyer and Judge O'Meara, on the record, that he had "no understanding" of the plea that Gerometta had outlined.  Simply put, Smith was not confused when he agreed to reject the plea and proceed to trial.

In light of these findings, Smith has not shown that "counsel's representation fell below the objective standard of reasonableness."  Lint, 542 F. App'x at 475 (punctuation modified).

Nor has he established prejudice.  Smith relies on his own testimony to argue that he would have accepted the Government's offer if he had understood it, see 1st Def. Suppl. Br. at 12–13, but Smith also testified that he had told his counsel that the plea he wanted was for 120 months, see 7/5/22 Hr'g Tr. at 60—an offer that was never on the table.  When Smith was asked in open court whether he wanted to consider the potential plea or proceed to trial—after yet another opportunity to discuss the substance of that plea with counsel—Smith elected to take his chances with the jury.  See 11/12/14 Trial Tr. at 12–13.  This evidence weighs heavily against any suggestion that Smith would have accepted the potential plea offered on the Government's terms, which cements the defeat of his ineffective assistance of counsel claim.  See Byrd, 940 F.3d at 257.

## C.  Investigation of Evidence and Other Strategic Decisions

Smith raises a host of other arguments that relate to counsel's allegedly deficient failure to investigate certain leads and to take other actions at trial that Smith recommended.  See Def. Mot. to Vacate at PageID.1661.  The Government views these arguments as attacks on trial strategy within defense counsel's discretion.  Gov't Suppl. Mem. at 9–12.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable;

and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690–691.  The Court considers each argument in turn.

### i.     B.W.'s Statements on Jail Tapes

Smith asserts that B.W. admitted to him over the phone while Smith was housed at Satellite County Jail that Smith had not forced or coerced her into human trafficking and that she would sign an affidavit to this effect, but counsel never followed up on Smith's requests to investigate. Def. Mot. to Vacate at PageID.1662.  Smith argues that his trial counsel's failure to review audio recordings of these jail calls and more thoroughly follow up on this potential lead constituted deficient assistance of counsel.  See 1st Def. Suppl. Br. at 15–16 (citing Blackburn v. Foltz, 828 F.2d 1177, 1183 (6th Cir. 1987) ("American Bar Association standards, which provide guidance as to what constitutes 'reasonable' professional conduct,  . . . mandate counsel's duty to investigate all leads relevant to the merits of the case.") (citations omitted); Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) ("Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.")).

The record is clear that trial counsel did follow up on these leads.  Gerometta was aware of the numerous jail calls referenced by Smith, and he said that the defense "put a team together to review those."  6/8/22 Hr'g Tr. at 65.  Wise also recalled that a "team" reviewed those tapes.  Id. at 137.  Gerometta's position was that the jail calls should not be introduced because he feared that Smith might seem "maybe controlling or manipulative and sometimes aggressive."  Id. at 67. Gerometta recalled discussing this strategy with Smith, and he thought that Smith "understood [counsel's] concerns."  Id. at 69.  Wise also believed that it was consistent with the defense's trial strategy—i.e., their position that Smith did not cause others to engage in commercial sex acts—to

exclude the jail calls with B.W., in part because of consideration of Smith's demeanor and attitude on those calls.  Id. at 143.  Both Gerometta and Wise recalled listening to the sample of phone calls identified by the team.  Id. at 65–66, 136–137.

Smith has submitted approximately 18 minutes of jail calls for the Court's review, arguing that this evidence "contradict[s]" the claim that they portray Smith as "controlling, manipulative, and aggressive."  1st Def. Suppl. Br. at 17 n.2.  The Court agrees that Smith does not present poorly in this sample of calls, but the Court understands that many other jail calls were available which may have created a different impression.  B.W. states on these calls that Smith never "beat" her, see Jail Calls at 7:05, but physical abuse was never an element the Government had to prove to convict Smith for sex trafficking by force, fraud, or coercion under 18 U.S.C. § 1591(a)(1).

Smith has failed to demonstrate that Gerometta and Wise performed deficiently when they investigated the potential admission of these jail calls, organized a team to review them, listened to certain calls personally, and determined that the risks of admission outweighed the benefits. Courts should be "highly deferential" to such instances of "counsel's strategy and trial tactics." Bentley, 248 F. App'x at 718 (punctuation modified).  Counsel was not deficient on this basis.

### ii.    Reviews of H.E.'s and Michael Peavy's Mental Histories

Smith also informed his counsel that they should investigate the mental histories of witnesses H.E. and Michael Peavy, who Smith says were incompetent to testify because they were mentally disabled.  Def. Mot. to Vacate at PageID.1662.  Smith submits that counsel ignored his requests to incorporate these points into the defense strategy.  Id.  Smith argues that counsel's failure to follow up on this lead constituted deficient counsel.  1st Def. Suppl. Br. at 18.

Again, Smith mischaracterizes the actions of his defense counsel.  Gerometta testified that he filed a motion for a subpoena under Federal Rule of Civil Procedure 17(c) to obtain the medical

records of these two witnesses, and the Court denied that motion.  See 6/8/22 Hr'g Tr. at 69–70.

Because Gerometta had interviewed Peavy and determined that he "suffered from a mental disease

or defect that made him incompetent to testify," id. at 69, Gerometta also moved to challenge the

admission of his testimony at trial, but the Court denied that motion as well, id. at 70.  Gerometta

did not believe that he had a "nonfrivolous competency concern" as to H.E.'s competence.  Id. at

70–71.

The Government asserts that counsel acted competently by moving for these witnesses'

mental health records, and "[c]ounsel cannot be deemed insufficient for pursuing the very relief

sought by Smith."  Gov't Suppl. Mem. at 11.  The Court agrees.  In response to the leads identified

by  Smith,  Gerometta  interviewed  one  witness  and  sought  more  information  about  both.

"[R]easonable professional judgment" supports this degree of investigation.  Strickland, 466 U.S.

at 691.  Counsel was not deficient.

 **iii.** **Smith's Competency**

Smith argues that his counsel was deficient for not following up on Smith's request to have

a  competency  hearing  for  Smith,  submitting  that  "Smith  can  not  [sic]  read  and  write,"  and

"[w]ithout the ability to read and writing [sic]," his "understand[ing] level is very low" such that

"mak[ing]  a  life  chang[ing]  decision  is  impossible."  Def.  Mot.  to  Vacate  at  7  (citing  Agan  v.

Dugger, 835 F.2d 1337, 1338 (11th Cir. 1987) ("The test for determining competence to stand trial

is 'whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding—and whether he has a rational as well as factual understanding

of the proceedings against him.'") (quoting Dusky v. United States, 362 U.S. 402, 402 (1960))

(punctuation modified, other citations omitted)).

Gerometta asserted that he did not have any concerns regarding Smith's ability to understand the proceedings and participate in his defense.  6/8/22 Hr'g Tr. at 71.  Smith was "able to discuss strategy, what evidence should be admitted, [and] what evidence we maybe want to keep out," and his views were "grounded in reality and logical even if incorrect."  Id. at 72.  Gerometta also did not have concerns that Smith could not read or write, and they exchanged written communications without Smith ever stating that he had difficulty with this medium.  Id.  Wise also did not have any concerns with Smith's competency, ability to understand the nature of the proceedings and the charges against him, or ability to read or write.  Id. at 141.  The present briefing supports this understanding, as Smith insists that he proposed multiple specific trial strategies for his counsel's consideration, evidencing his awareness of and engagement in the proceedings.

The Government asserts, based on trial counsel's testimony and Smith's ability to take notes throughout his hearing and to act as his own attorney, that any motion to evaluate Smith's competence would have been meritless.  Gov't Suppl. Mem. at 11.  The Court agrees.  Given the testimony of his counsel and Smith's communications to the Court, the Court does not doubt that Smith had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402.  Counsel was not deficient for failing to seek a competency hearing.

### iv.    Polygraph Test

Smith argues that he communicated to his counsel that he would like to take a polygraph test and incorporate the results into the record "to show Smith had no involvement with [M.R.]." Def. Mot. to Vacate at 8.  He includes a copy of a polygraph test he eventually took, though as the Government notes, this test is dated to nearly a year after his trial.  See Gov't Resp. to Def. Mot. to Vacate at 2.

20

Wise understood that a polygraph test would not have been admissible at trial, and that a motion to admit a polygraph would have been "[n]ot meritorious" if not "frivolous." 6/8/22 Hr'g Tr. at 142. Wise is likely correct. See United States v. Neuhard, 770 F. App'x 251, 255 (6th Cir. 2019) ("While polygraph results are usually inadmissible, in limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible . . . .") (punctuation modified, citation omitted). With no further explanation from Smith as to why a polygraph test would have been meritorious in his particular circumstance, the Court cannot doubt trial counsel's strategic determination that such an effort was not worth the defense's resources. Counsel was not deficient for deciding not to try to admit a polygraph test for Smith.

### v.      Additional Strategic Decisions and Forensic Phone Report

Smith states he provided counsel with "writ[ten] detail of everyone in Smith[']s indictment," but "not one time did counsel use Smith[']s version of the case." Def. Mot. to Vacate at 8. Smith similarly attacks his counsel's decision not to "recall Gover[n]ment witnesses back to the stand" and suggests that Smith was robbed of his opportunity for "cross examination [of] each Government witness." Id.

These vague assertions do no more than challenge defense counsel's strategy. "[I]mpeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." Dell v. Straub, 194 F.Supp.2d 629, 651 (E.D. Mich. 2002).

In this context, Smith also references "exculpatory evidence" that he thinks would have come to light if counsel had "follow[ed] up wi[th] Smith[']s version of the case." Def. Mot. to Vacate at 8. This evidence consists of a forensic report of the phone records of Steven Barber—

another individual allegedly involved with sex work—which Smith believes would have been "favorable to Smith" and useful in "impeach[ing] M.R.[']s testimony." Id. Smith argues that his counsel should have made greater efforts to obtain and consider this evidence sooner. Id.; see also 1st Def. Suppl. Br. at 18.

The Government sheds further light on this claim, explaining that the Government did not discover and inform Smith's counsel of this forensic report until after the jury returned its verdict. See Gov't Resp. to Def. Mot. to Vacate at 23. Smith filed a motion for a new trial, based in part on the Government's failure to turn over this evidence before trial (Dkt. 72). This Court denied that motion, explaining: "The newly discovered evidence is redundant and merely corroborates the minor victim's testimony that both Defendant and Barber were actively involved in her prostitution. Therefore, the newly discovered forensic cell phone report is not material and is merely cumulative." 7/14/15 Op. & Order at 3 (Dkt. 72). The Sixth Circuit affirmed this decision, explaining that this report was not "material" under a Brady analysis and that "the verdict was unaffected by the Government's failure" to produce it. Smith, 706 F. App'x at 245.

As the Government correctly submits, see Gov't Suppl. Mem. at 12, the findings of this Court and the Sixth Circuit establish that Smith was not prejudiced by his counsel's failure to obtain the forensic phone report. Without prejudice, there is no ineffective assistance of counsel. See Lint, 542 F. App'x at 476.

Despite voluminous efforts, Smith has not identified "the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on . . . the jury's verdict." Humphress, 398 F.3d at 858 (punctuation modified, citation omitted). The Court denies his motion to vacate his sentence.

### D. Motion to Amend § 2255 Motion

Except under certain circumstances not present here, a § 2255 motion must be filed one year after the date on which the judgment of conviction became final. See 28 U.S.C. § 2255(f)(1). Smith's conviction became final when the Supreme Court of the United States denied Smith's petition for certiorari on April 17, 2018 (Dkt. 109), and Smith timely mailed his § 2255 motion on April 15, 2019, see Def. Mot. to Vacate. He moved to amend that motion more than a year after his conviction became final: on September 3, 2019.

A motion to amend a § 2255 petition after the statute of limitations has run is barred unless the original and amended pleadings "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "An amended habeas petition . . . does not relate back (and thereby escape [the Antiterrorism and Effective Death Penalty Act of 1996's] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005).

Smith seeks to add multiple grounds to his § 2255 motion. He argues: (i) his counsel deficiently allowed the Government to introduce "false evidence against Smith," referencing the Government's assertion that Smith was arrested in a hotel room in M.R.'s presence, which Smith denies, see Mot. to Amend at 2–3; (ii) the testimony of "Agent Muscatello" identifying Smith should have been stricken, id. at 3; (iii) the trial court or counsel should have clarified whether Juror #4's verdict was for a yes or no as to the guilty counts, id. at 4–5; (iv) Smith's jury was not a jury of his peers based on race and age, id. at 4; (v) counsel should have taken a different substantive approach to questioning a certain Federal Bureau of Investigations victim witness, id. at 8; and (vi) the Court should not have made certain comments to the jury about what Smith sees as the weight of the defense's evidence and the strength of Smith's case, id. at 9–12.

As the Government correctly notes, <u>see</u> Gov't Resp. to Def. Mot. to Vacate at 4–5, all of these arguments "assert[] a new ground for relief supported by facts that differ in both time and type from those" in Smith's original § 2255 motion.  <u>Mayle</u>, 545 U.S. at 650.  Accordingly, the Court denies Smith's motion to amend to the extent that it relies on these newly asserted grounds. <u>Id.</u>

As discussed above, Smith's motion to amend also argues that the trial court "impermissibly interfered with Smith['s] right to testify" by "threatening the use of expletives and contempt." Def. Mot. to Amend at 6.  This argument relates back to his original argument that the trial court interfered with his right to testify.  Accordingly, the Court grants Smith's motion to amend his § 2255 motion in part, and it considers this section of Smith's motion to amend.  For the reasons explained above, this argument has no merit.

### E.  Motion to Provide Documents

Smith also filed a short pro se motion asking the Court to "be present during any testimony and[/]or provide all documents that be provided to the Government" in this matter.  <u>See</u> Mot. to Provide Documents at 1.  The Court has not been absent for any testimony and has not provided any documents to the Government.  The Court notes that it assigned counsel to Smith following his filing of this motion (Dkt. 127).  The Court is satisfied that—due to the availability of counsel and the Court's attentiveness to Smith's access to relevant documents, <u>see, e.g.</u>, 6/13/22 Order (Dkt. 138) (ordering Federal Bureau of Prisons to ship paperwork from Smith's prior facility to his standby counsel)—Smith has been able to review and rely on the materials he needs to pursue his § 2255 motion.  The Court denies as moot his motion for the Court to be present during testimony and to provide any documents provided to the Government.

### III.  CONCLUSION

For the reasons explained above, the Court denies Smith's motion to vacate his sentence (Dkt. 110), grants in part and denies in part Smith's motion to amend his motion to vacate (Dkt. 116) and denies as moot Smith's motion asking the Court to be present during testimony and to provide him with any documents provided to the Government (Dkt. 118).

SO ORDERED.

Dated:  September 26, 2022                          s/Mark A. Goldsmith
     Detroit, Michigan                              MARK A. GOLDSMITH
                                         United States District Judge